# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| AMANDA J. STEARNS, | |
| Plaintiff, | No. 17-CV-2031-LTS |
| vs. | **REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

The claimant, Amanda J. Stearns ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability and disability insurance benefits (DIB), under Title II Social Security Act, 42 U.S.C. §§ 401-34 (Act). Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that claimant was not disabled. For the following reasons, I respectfully recommend that the Court **affirm** the ALJ's decision.

## I. BACKGROUND

I have adopted the facts as set forth in the parties' Joint Statement of Facts (Doc. 12) and, therefore, will summarize only the pertinent facts. Claimant was born in 1980, was thirty-one years old when she allegedly became disabled, and was thirty-five years old at the time of the ALJ's decision. (AR 37-38).[1] Claimant has prior work experience; her work activity since the alleged onset date, however, did not rise to the level of substantial gainful activity. (AR 28; 37).

---

[1] "AR" refers to the administrative record below.

On July 18, 2013, claimant applied for disability and disability insurance benefits. (AR 26). Claimant alleged disability beginning May 1, 2012. (*Id.*). The Commissioner denied claimant's application initially and on reconsideration. (*Id.*).

On February 23, 2015, ALJ Tela L. Gatewood held a hearing at which claimant and a vocational expert testified. (AR 47-80). On December 30, 2015, ALJ Michael Comisky held a second hearing at which claimant and a different vocational expert testified. (AR 81-110). On March 25, 2016, ALJ Michael Comisky found claimant was not disabled. (AR 26-39). On May 8, 2017, the Appeals Council denied claimant's request for review of the ALJ's decision, making the ALJ's decision final and subject to judicial review. (AR 1-3).

On July 7, 2017, claimant timely filed her complaint in this Court. (Doc. 3). By January 19, 2018, the parties had submitted their respective briefs (Docs. 13; 14), and on February 26, 2018, the Court deemed this case fully submitted and ready for decision. On June 5, 2018, the Honorable Leonard T. Strand, Chief United States District Judge, referred this case to me for a Report and Recommendation.

## II.   *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of

2

inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*; *see also* 20 C.F.R. § 404.1521.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the

regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If claimant can still do her past relevant work, then she is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. § 416.960(b). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite her [ ] physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. Claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before making a determination about the existence of a disability. The burden of

persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III.   THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since May 1, 2012, the alleged onset date of her disability. (AR 28).

At Step Two, the ALJ found that claimant had the following severe impairments: "major joint dysfunction, degenerative disc disease, affective disorders, anxiety disorder, and personality disorder." (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments or combination of impairments met or medically equaled a presumptively disabling impairment listed in the relevant regulations. (AR 29-30).

At Step Four, the ALJ found claimant had the RFC to perform light work with the following limitations:

> [C]laimant could lift or carry 20 pounds occasionally and 10 pounds frequently. She could stand or walk for two hours in an eight-hour workday. She could sit for six hours in an eight-hour workday. She could push or pull in the limits for lifting and carrying. She could occasionally climb ramps and stairs. She should not climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, and crouch. She should not need to crawl as a work duty. She would use a cane to ambulate away from the workstation. She could understand, remember, and carry out simple instructions and tasks at a SVP 2 level. She could have occasional contact with co-workers, supervisors, and the general public.

(AR 30). Also at Step Four, the ALJ determined that claimant could not perform past work. (AR 37).

At Step Five, the ALJ found that considering claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that claimant could perform. (AR 38). These included document preparer, toy

stuffer, and film touch-up inspector. (*Id.*). Therefore, the ALJ found that claimant was not disabled. (AR 38-39).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health*

*& Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant advances three arguments in favor of remand: 1) the ALJ's RFC assessment is flawed because the ALJ failed to properly evaluate the work-related limitations from examining physician Dr. Sunde Nesbit, Ph.D. (Doc. 13, at 3-12); 2) the ALJ's RFC assessment is flawed because it is not supported by substantial medical evidence from a treating or examining source (Doc. 13, at 12-14); and 3) the ALJ's RFC assessment is flawed because the ALJ discounted claimant's subjective allegations without identifying inconsistencies in the record as a whole. (Doc. 13, at 15-17). I will address each argument in turn.

### A. The ALJ's Evaluation of Dr. Nesbit's Opinions

Claimant argues that "[t]he ALJ's evaluation of Dr. Nesbit's report and limitations is not supported by substantial evidence." (Doc. 13, at 12). Dr. Nesbit, as a licensed psychologist (AR 1043), was an acceptable medical source. 20 C.F.R. § 404.1513(a)(2). Dr. Nesbit was, however, an examining source, as opposed to a treating source. (Doc. 13, at 3). The Commissioner evaluates a non-treating source's opinions through several factors, including, consistency with the medical record as a whole and the familiarity the medical source has with the case record. 20 C.F.R. §§ 404.1527(c)(4); 404.1527(c)(6).

Claimant reportedly stated to Dr. Nesbit that while working at Wal-Mart as a cashier, claimant "struggle[d] with being around people and she shut downs." (AR 1035 (internal quotation marks omitted)). The ALJ found that this "allegation is inconsistent with the fact that claimant reportedly worked her way up to become a customer service manager at Wal-Mart." (AR 36). Further, the ALJ highlighted the inconsistency in the record between Dr. Nesbit's opinions and claimant's other mental treatment progress notes—specifically that the clinical findings of two separate providers did not "comport with the significant limitations alleged in Dr. Nesbit's report." (AR 37). The ALJ further explained that he found Dr. Nesbit's opinion that "claimant could not function appropriately in the workplace," due to her "avoidance of social situations" to be inconsistent with claimant's work history at Wal-Mart. (*Id.*). Significantly, the ALJ twice emphasized that claimant ultimately left her job at Wal-Mart because of a knee injury, and not because of her mental impairments. (AR 36-37).

I find that the ALJ did give good reasons for discounting the weight afforded to Dr. Nesbit's opinions and that those opinions were inconsistent with the record as a whole. Because Dr. Nesbit's opinions were inconsistent with the record as a whole, I find that the ALJ was justified in discounting the weight afforded to Dr. Nesbit's opinion. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (holding that an ALJ may

8

discount an opinion's weight when it is inconsistent with the record as a whole). I therefore recommend that the Court uphold the weight attributed to Dr. Nesbit's opinions.

### B. *Substantial Evidence on the Record as a Whole*

Claimant next argues that the ALJ's RFC assessment is flawed because it is not supported by substantial medical evidence from a treating or examining source. (Doc. 13, at 12-14). In support, claimant argues that the ALJ's residual functional capacity assessment is flawed because the ALJ gave "no weight" to Dr. Nesbit's examining psychologist opinion from 2016 (AR 36-37), and only "some weight" to non-examining state agency psychological consultants' opinions (AR 34-35), whose opinions, claimant argues, do not normally constitute substantial evidence on the record as a whole. (Doc. 13, at 13-14). Importantly, claimant argues that although the ALJ granted "significant weight" to consultative examiner Daniel Ekstrom, PsyS's opinions, Dr. Ekstrom's report was rendered in December 2012 and, therefore, could not account for claimant's deteriorating mental condition. (*Id.*, at 14). As a result, claimant alleges that the ALJ's RFC may have been supported by substantial medical evidence for 2012 and early 2013, but the medical evidence of record "could not and did not anticipate the greater limitations" that claimant would ultimately experience due to her deteriorating mental condition. (*Id.*). Claimant does not, however, contend that the ALJ should have further developed the record with respect to the deterioration of claimant's mental condition. Ultimately, claimant contends that because the ALJ improperly discounted medical opinions, there was not sufficient medical evidence upon which to base the ALJ's RFC assessment. (Doc. 13, at 12-13). In the absence of such medical evidence, claimant argues, "the ALJ's decision cannot be said to be supported by substantial evidence." (*Id.* (relying on *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995))).

I will assume, *in arguendo*, that Dr. Ekstrom's opinions could only account for claimant's impairments from the alleged onset date of disability through December 2012,

when Dr. Ekstrom rendered his opinion. (*See* AR 35). The ALJ found Dr. Ekstrom's opinions to be consistent with the evidence of record and therefore attributed Dr. Ekstrom's opinions "significant weight." (AR 36). Because the ALJ gave Dr. Ekstrom's 2012 opinions "significant weight," and because Dr. Ekstrom's opinions are buttressed by the medical evidence of record, I find that the ALJ's RFC assessment for the time between claimant's alleged onset date of disability and December 2012 is supported by substantial medical evidence on the record as a whole.

I must now determine whether the ALJ's RFC assessment is supported by substantial medical evidence on the record as a whole from the time beginning immediately after Dr. Ekstrom rendered his opinions through the date of the ALJ's decision. I will assume, *in arguendo*, that Dr. Ekstrom's opinions are not probative on this issue. In the absence of Dr. Ekstrom's opinions, the medical opinions the ALJ considered in determining claimant's RFC were the opinions of the state agency consultative examiners and the opinions of Dr. Nesbit. (AR 34-36). As stated, *supra*, the ALJ afforded "some weight" to the opinions of the state agency examiners, and "no weight" to Dr. Nesbit's opinions. (AR 34; 37).

Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record as a whole. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("It is true that we do not consider the opinions of non-examining consulting physicians *standing alone* to be 'substantial evidence.'" (emphasis added)). "[T]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citation and internal quotation marks omitted). In *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit Court of Appeals reversed an ALJ's decision because the Eighth

Circuit found that the ALJ failed to satisfy his duty to fully develop the record where the ALJ relied on the opinions of only non-treating, non-examining physicians. Nevertheless, the holding in *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Morrow v. Berryhill*, No. C16-2023-LTS, 2017 WL 3581014, at *7 (N.D. Iowa Aug. 18, 2017) (citation and internal quotation marks omitted).

The Court may affirm the ALJ's decision, "[e]ven without an opinion from a treating or examining source, . . . if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Id.*; *see also Agan v. Astrue*, 922 F. Supp.2d 730, 756 (N.D. Iowa 2013) (upholding ALJ's decision where the ALJ's decision was supported by substantial evidence on the record as a whole, even though the ALJ did not rely on the opinion of a treating physician in formulating his opinion). "The question is whether there is sufficient evidence of 'how [the claimant's] impairments . . . affect [her] residual functional capacity to do other work,' or her 'ability to function in the workplace.'" *Morrow*, 2017 WL 3581014, at *7 (omission and alteration in original) (quoting *Hattig v. Colvin*, No. C12-4092 MWB, 2013 WL 6511866, at *11 (N.D. Iowa Dec. 12, 2013)). In the end, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence)); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)).

In addressing claimant's mental impairments, the ALJ first highlighted inconsistencies between claimant's subjective reports and the documented clinical observations, as well as between claimant's subjective reports and the non-medical evidence of record. (AR 34-35). The ALJ then found, based on the totality of the evidence that "claimant was capable of understanding, remembering, and carrying out

11

simple instructions and tasks at a SVP 2 level" and "could have occasional contact with co-workers, supervisors, and the general public." (*Id.*). In making these findings, the ALJ attributed "some weight" to the opinions of state agency psychologists (AR 35), and "no weight" to Dr. Nesbit's psychological opinion. (AR 37).

Further, the ALJ considered claimant's progress notes from Blackhawk Grundy Mental Health Center. (AR 37; 453-73, 603-35, 763-866, 934-73). Claimant does not challenge the ALJ's reliance on the progress notes. In short, the ALJ relied on a significant amount of medical evidence in assessing claimant's mental RFC, including the medical records themselves, as well as opinions from both the state agency consultants. Notably, the ALJ included greater limitations than those assessed by the state agency consultants "in deference to evidence developed at the hearing level, including [claimant's] hearing testimony." (AR 35). I conclude that the ALJ's mental RFC assessment with respect to the time Dr. Nesbit rendered his opinions through the date of the ALJ's decision is supported by substantial evidence on the record as a whole, even though the ALJ did not rely on the opinions of a treating or examining source with respect to this time period. I therefore conclude that the ALJ's mental RFC assessment, in its entirety, is supported by substantial evidence on the record as a whole.

I will now turn to the ALJ's assessment of claimant's physical RFC. Claimant's argument with respect to the ALJ's physical RFC assessment is comprised of only one paragraph, which asserts that the ALJ's RFC analysis could not have been supported by substantial evidence on the record as a whole. Specifically, claimant argues that because the only medical evidence regarding claimant's physical impairments stemmed from the opinions of state agency consultants, and those consultants rendered their opinions in 2013, the opinions could not have taken into consideration claimant's second knee surgery, which occurred in 2014. (Doc. 13, at 14). Claimant does not, however, offer any differences that would have resulted in the opinions rendered had the consultants

reviewed claimant's case after her second knee surgery. (*Id.*). Indeed, the ALJ included several limitations pertaining to claimant's ability to ambulate and achieve full functionality of her lower body. (*See* AR 30). The burden is on claimant to prove her RFC. *Eichelberger*, 390 F.3d at 591. Here, claimant has failed to present evidence—or even allege—that her RFC would have been different had the ALJ had the benefit of opinions rendered after claimant's second knee surgery. I therefore recommend that the Court affirm the ALJ's RFC assessment, both with respect to the ALJ's physical RFC assessment and the ALJ's mental RFC assessment.

### C. *Claimant's Subjective Allegations*

Finally, I understand claimant's third line of argument to be that the ALJ's RFC assessment at Step Four was flawed because the ALJ did not properly evaluate Dr. Nesbit's opinion in light of the *Polaski* analysis and failed to detail the reasons for discrediting claimant's subjective complaints. (Doc. 13, at 15). Claimant does not point to any subjective allegations, specifically, that she alleges were wrongfully discounted. I have already found that the ALJ properly evaluated Dr. Nesbit's opinion, and thus, I will address only claimant's subjective allegations.

A claimant's subjective allegations are to be evaluated according to the standards set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (outlining the factors that the adjudicator must give full consideration relating to subjective complaints). In addition to the objective medical evidence and other evidence of record, the ALJ must consider: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the [claimant's] pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions." *Polaski*, 739 F.2d at 1322; *see also Wheeler v. Berryhill*, No. C17-4038-LTS, 2018 WL 2266514, at *6 (N.D. Iowa May 17, 2018).

Here, the ALJ referenced claimant's daily activities (AR 31); the location, duration, frequency, and intensity of claimant's pain (AR 32-33); and effectiveness of medication, physical therapy, and other treatment modalities (*id.*). Although the ALJ did not specifically cite to *Polaski*, the ALJ nevertheless discussed the relevant factors. Nothing more is needed. *See Myers*, 721 F.3d at 527 (holding the ALJ "was not required to discuss each factor's weight in the credibility calculus"). "If the ALJ gives good reasons for discrediting some testimony, the court is bound by that finding unless it is not supported by substantial evidence on the record as a whole." *Wheeler*, 2018 WL 2266514, at *7 (citing *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)). This Court, in *Wheeler*, pointed to several instances where the ALJ identified inconsistencies between claimant's complaints and the medical evidence of record as sufficient "good reasons" for the ALJ to discredit claimant's testimony. *Id.* at *6-*7.

In his decision in the instant case, the ALJ pointed to objective medical evidence in the record that eroded claimant's subjective allegations. (AR 32-34). The ALJ found that the physical examinations showed claimant had reported improved functioning of the knee after her second knee surgery. (AR 33 (citing AR 875)). Further, the ALJ highlighted that during the functional capacity evaluation in January 2016, claimant self-limited her performance prior to maximal signs of effort, rendering the evaluation invalid. (AR 33). Despite the ALJ's justifications for discounting claimant's subjective allegations, the ALJ still found it appropriate to impose physical limitations consistent— to a degree—with claimant's subjective allegations. (AR 34).

With respect to claimant's mental impairments, the ALJ pointed to medical evidence, workplace functioning, and job history as factors he considered when discounting claimant's credibility as to her allegations regarding her mental limitations. (AR 35-36). The ALJ noted that claimant's promotion to customer service manager while employed at Wal-Mart belied her allegations that claimant was mentally unable to

perform her job. (AR 35-37). Additionally, medical evidence contradicted claimant's allegations of memory deficits. (AR 35). Similar to his physical RFC findings, the ALJ discounted claimant's credibility as to her mental impairments and still reduced claimant's RFC to account for claimant's alleged mental impairments. (AR 35).

Aside from the aforementioned medical evidence, the ALJ noted that claimant's daily activities "are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (AR 31). Specifically, the ALJ highlighted claimant's own statements within the record of claimant's ability to cook simple meals, shop, drive, perform personal care tasks, wash the laundry, and care for a dog. (*Id.*). The ALJ found that this level of activity contradicted claimant's subjective allegations of the intensity, persistence, and limiting effects of the alleged symptoms. (*Id.*).

Claimant argues that a person does not have to be bedridden to be found disabled. (Doc. 1, at 16 (citing *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005))). Although accurate, the Eighth Circuit more recently held that "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (citation omitted). Acts that are inconsistent with subjective allegations diminish a claimant's credibility. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Here, the ALJ found claimant's allegations of total disability not fully credible. When an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, a court should normally defer to the ALJ's credibility determination because the ALJ has had the opportunity to observe the claimant firsthand. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). I find that the ALJ has given good reasons for discounting claimant's subjective allegations, and thus, I accept the ALJ's credibility determination.

Contrary to claimant's argument, I find that the ALJ did consider the record as a whole in deciding to discount claimant's subjective allegations. I find that although

claimant presented testimony and evidence of disabling limitations, the ALJ's decision was supported by substantial evidence on the record as a whole.

## VI. CONCLUSION

For the reasons set forth above, I respectfully recommend that the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 30th day of July, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa