# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| AMANDA J. STEARNS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations,[1]<br><br>　　　　Defendant. | No. C17-2031-LTS<br><br>MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION |

## I.　　INTRODUCTION

　　　　This case is before me on a Report & Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. Doc. No. 17. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Amanda J. Stearns' application for disability insurance benefits (DIB) under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-434.

　　　　Stearns filed timely objections (Doc. No. 20) to the R&R and sought leave (Doc. No. 19) to file a supplemental brief addressing the application of *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). The Commissioner did not resist. I granted leave and the parties filed supplemental briefs, which I have considered. *See* Doc. Nos. 22, 23, 25, 26.[2]

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations. For simplicity, I will continue to refer to the defendant as "the Commissioner" throughout this order.

[2] The Commissioner timely filed a supplemental response (Doc. No. 23), but it did not address the issues raised in Stearns' supplemental brief. She filed a second supplemental response (Doc.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citation omitted).

---

No. 25) that did address those issues, but was one day late. Stearns then filed a reply (Doc. No. 26). Because this is a new issue before the court that could arise in other cases, I find it best to consider both parties' entire arguments in deciding whether remand is appropriate. Thus, I will consider the Commissioner's late second supplemental response (Doc. No. 25) and Stearns' reply (Doc. No. 26) in addressing the application of *Lucia*.

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citation omitted), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Stearns applied for DIB on July 18, 2013, alleging she became disabled on May 1, 2012, due to left knee pain and swelling with arthritis and cartilage issues, depression, anxiety and bi-polar disorder.[3] AR 345. After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found at step five that there were jobs in significant numbers in the national economy that Stearns could perform based on her

---
[3] The ALJ summarized her severe impairments as major joint dysfunction, degenerative disc disease, affective disorders, anxiety disorder and personality disorder. *See* AR 28.

residual functional capacity (RFC) and, therefore, she was not disabled as defined in the Act. Stearns argues the ALJ erred in determining that she was not disabled because:

1. The ALJ failed to properly evaluate the work-related limitations from examining source Dr. Sunde Nesbit.

2. The ALJ's RFC is not supported by substantial medical evidence from a treating or examining source.

3. The ALJ improperly discounted Stearns' subjective allegations without identifying inconsistencies in the record as a whole.

*See* Doc. No. 13. Judge Williams addressed each argument in his R&R.

With regard to Dr. Nesbit's opinion, Judge Williams first noted that he is an examining source as opposed to a treating source. Doc. No. 17 at 8. Therefore, the ALJ must evaluate his opinion according to a number of factors, such as consistency with the medical record as a whole and the source's familiarity with the case record. *Id.* Judge Williams concluded the ALJ gave good reasons for discounting Dr. Nesbit's opinions based on inconsistencies with the record as a whole. *Id.* For instance, Dr. Nesbit noted that Stearns struggled with her cashier job at Wal-Mart because she would shut down when she was around people. *Id.* The ALJ reasoned this was inconsistent with the fact that Stearns had worked her way up from cashier to customer service manager at Wal-Mart. *Id.* Also, Stearns had left her job at Wal-Mart due to her knee injury rather than any mental impairment. *Id.* In addition, the ALJ did not find Dr. Nesbit's opinions consistent with other mental treatment notes in the record. He stated that the clinical findings of two other providers did not "comport with the significant limitations alleged in Dr. Nesbit's report." *Id.* (citing AR 37).

Judge Williams next considered whether the ALJ's RFC assessment was supported by substantial medical evidence. *Id.* at 9. Stearns argues the fact that the ALJ gave "no weight" to Dr. Nesbit's opinion from 2016 and "some weight" to non-examining state agency psychological consultants' opinions means the ALJ's RFC cannot be supported

by substantial evidence. *Id.* Stearns acknowledges that the ALJ did give "significant weight" to the consultative examiner's opinion, but argues that opinion was issued in December 2012 and fails to account for Stearns' deteriorating mental condition. *Id.* Judge Williams reasoned that because the ALJ gave this opinion "significant weight" and it was buttressed by the medical evidence, the ALJ's RFC assessment was supported by substantial medical evidence on the record as a whole for the time between Stearns' alleged onset date and December 2012. *Id.* at 10. For the remainder of the time, Judge Williams noted that the medical opinion evidence consisted of opinions from the state agency consultative examiners (which the ALJ gave "some weight") and the opinions of Dr. Nesbit (which the ALJ gave "no weight"). *Id.* After summarizing Eighth Circuit precedent, which does not require that an RFC be supported by a specific treating or examining medical source opinion, Judge Williams concluded that the ALJ's RFC assessment was supported by medical evidence in the record as a whole. *Id.* at 11-12. With regard to Stearns' mental impairments, Judge Williams noted the RFC was supported not only by the state agency consultant opinions, but also Stearns' medical records. *Id.* at 12. With regard to her physical impairments, Judge Williams reasoned that although the state agency consultants did not take her second knee surgery into account, Stearns did not present any evidence, or even argue, that her RFC would have been different had the consultants considered this evidence. *Id.* at 12-13. Indeed, Judge Williams noted the ALJ adopted several physical limitations in the RFC and Stearns failed to point out any differences in her capabilities following the second knee surgery that would call for a more restrictive RFC. *Id.* For these reasons, Judge Williams concluded the ALJ's overall RFC assessment was supported by substantial evidence in the record as a whole, including substantial medical evidence.

Finally, Judge Williams addressed the ALJ's consideration of Stearns' subjective allegations. *Id.* at 13. To the extent Stearns argues the ALJ improperly discounted Dr. Nesbit's opinions for relying on Stearns' subjective allegations, Judge Williams

6

referenced his previous analysis. *Id.* He then went on to consider the ALJ's analysis of Stearns' subjective allegations alone. *Id.* at 14. He noted the ALJ discussed the relevant *Polaski* factors and discredited some of her subjective allegations based on lack of support from the objective medical evidence and the fact that Stearns reported improved functioning after her second knee surgery and had self-limited her performance in a functional capacity evaluation in January 2016. *Id.* Judge Williams stated that, for the most part, the ALJ adopted physical limitations consistent with Stearns' subjective allegations. *Id.* With regard to her mental impairments, Judge Williams noted the ALJ relied on the medical evidence, workplace functioning, job history and daily activities to find that her limitations were not as severe as alleged. He concluded the ALJ provided good reasons for discounting Stearns' subjective allegations and that the ALJ's overall credibility determination was supported by substantial evidence in the record as a whole. *Id.* at 15-16.

## IV. ANALYSIS

Aside from the newly-raised issue regarding *Lucia v. S.E.C.*, Stearns' objections mirror the arguments raised in her principal brief. Because Stearns challenges each aspect of the R&R, I will review each issue de novo after considering the newly-raised *Lucia* issue. *See* 28 U.S.C. § 636(b)(1).

### A. Application of Lucia v. S.E.C.

In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, meaning that the President, a court of law or department head must appoint them. *Lucia*, 138 S. Ct. at 2049. Stearns argues ALJs in the Social Security Administration are similar "Officers of the United States" and have not been properly appointed. *See* Doc. No. 22. She seeks the same remedy granted in *Lucia* – "a new hearing before a

properly appointed official." *See* Doc. No. 22 at 8; *Lucia*, 138 S. Ct. at 2055 (internal quotations omitted). Stearns argues I may consider this issue even though it was not raised below because there is no issue exhaustion requirement in Social Security appeals. *See Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.").

The Commissioner argues that Stearns reads *Sims* too broadly. She contends that while claimants are not required to raise issues for review by the Appeals Council, they are required to raise them before the ALJ. *See* Doc. No. 25 at 5 (explaining that the *Sims* court explicitly stated "[w]hether a claimant must exhaust issues before the ALJ is not before us" and citing cases where courts have held issues not raised before the ALJ are deemed waived); *see also Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (finding the claimant waived the issue of his obesity as an impairment because he never alleged any limitation as a result of his obesity in his application for benefits or during the hearing). The Commissioner argues this interpretation is also consistent with various Social Security regulations. *See* 20 C.F.R. § 404.933(a)(2) (stating that in a request for a hearing before an ALJ, the claimant should list the reasons he or she disagrees with the previous determination or decision); § 404.939 ("If you object to the issues to be decided at the hearing you must notify the administrative law judge in writing at the earliest possible opportunity . . . ."); § 404.946(b) (describing process for raising new issues before or at the hearing before the ALJ). Finally, the Commissioner argues this is consistent with *Lucia*'s emphasis that only "one who makes a timely challenge" is entitled to relief. *Lucia*, 138 S. Ct. at 2055.

In reply, Stearns argues that her Appointments Clause challenge should be heard because it is a constitutional claim involving separation of powers and Social Security disability proceedings are non-adversarial. *See* Doc. No. 26 at 3. As to the constitutional nature of the claim, she points out that the Commissioner has released an emergency

8

message directing ALJs to note on the record whether an Appointments Clause challenge is made at the administrative level, but "[b]ecause SSA lacks the authority to finally decide constitutional issues such as these, ALJs will not discuss or make any findings related to the Appointments Clause issue on the record." *Id.* at 4 (citing EM-18003 REV, effective June 25, 2018 at Doc. No. 26-2). She argues constitutional claims may be raised for the first time in federal court based on the following:

> The fact that Eldridge failed to raise with the Secretary his constitutional claim to a pretermination hearing is not controlling. As construed in *Salfi*, § 405(g) requires only that there be a "final decision" by the Secretary with respect to the claim of entitlement to benefits. Indeed, the named appellees in *Salfi* did not present their constitutional claim to the Secretary. *Weinberger v. Salfi*, O.T. 1974, No. 74-214, App. 11, 17-21. The situation here is not identical to *Salfi*, for, while the Secretary had no power to amend the statute alleged to be unconstitutional in that case, he does have authority to determine the timing and content of the procedures challenged here. 42 U.S.C. § 405(a). We do not, however, regard this difference as significant. It is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context. The Secretary would not be required even to consider such a challenge.

*Mathews v. Eldridge*, 424 U.S. 319, 329 (1976). *See id.* at 329, n. 10 ("If Eldridge had exhausted the full set of available administrative review procedures, failure to have raised his constitutional claim would not bar him from asserting it later in a district court.").

With regard to the special, non-adversarial nature of Social Security disability proceedings, Stearns relies on *Harwood v. Apfel* to argue that her failure to raise this issue below does not result in it being forfeited.[4] In that case, the Eighth Circuit stated "it strikes us as odd that Harwood could 'waive' his argument that the ALJ should have

---

[4] The issue would be forfeited rather than waived because forfeiture involves the "failure to make the timely assertion of a right, whereas waiver is the "'intentional relinquishment or abandonment of a known right.'" *See United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The "right" in this case was not known until *Lucia* was decided on June 21, 2018.

9

acted *sua sponte* to develop the record more fully." *Harwood v. Apfel*, 186 F.3d 1039, 1043 n.3 (8th Cir. 1999). The claimant in *Harwood* failed to raise two arguments in his brief to the Appeals Council and the district court considered those issues waived.[5] *Id.* at 1041. On appeal, the Eighth Circuit disagreed and decided the case based on the merits. *Id.* Stearns reconciles *Anderson* and *Harwood* by stating that *Anderson* acknowledges it is difficult for a claimant to argue the ALJ should have developed the record as to a certain impairment if that impairment was never brought to the ALJ's attention, but *Harwood* does not preclude a claimant from raising the issue under an adversarial waiver theory. She contends this interpretation is consistent with other Eighth Circuit cases discussing *Sims*. *See Ballanger v. Johanns*, 495 F.3d 866, 869 (8th Cir. 2007) (explaining that under *Sims*, the nature of the agency proceedings as adversarial or non-adversarial determines whether issue exhaustion is a requirement absent any statute or regulation requiring issue exhaustion).

The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with *Lucia*, *Sims*, *Anderson* and *Harwood*. Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is

---

[5] Notably, *Harwood* did not address whether failure to raise claims with the ALJ resulted in waiver. *See Harwood*, 186 F.3d at 1043 n. 3 (stating "the only procedural default alleged by the Commissioner and found by the district court is Harwood's failure to bring two particular issues to the Appeals Council's attention. We need not decide whether Harwood's apparent failure to raise two of his issues before the ALJ is fatal to his claims, but it strikes us as odd that Harwood could "waive" his argument that the ALJ should have acted *sua sponte* to develop the record more fully.").

entitled to relief. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83). In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id.* In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. *Harwood* is essentially no different than *Sims* in that it too recognizes a claimant need not exhaust issues before the Appeals Council in order to raise them on judicial review. Neither *Sims* nor *Harwood* addressed whether the issue had to be raised before the ALJ. *Lucia* makes it clear that this particular issue must be raised at the administrative level.

Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

### B. Dr. Nesbit's Opinion

Stearns relies solely on the arguments in her principal brief to challenge the weight assigned to Dr. Nesbit's opinion by the ALJ. She makes no argument as to how or why the R&R did adequately address this issue. *See* Doc. No. 20 at 2. Stearns correctly points out that Dr. Nesbit is an examining source and an acceptable medical source. She contends his evaluation is supported by objective evidence including the Millon Clinical Multiaxial Inventory-3rd Edition, the Rorschach Inkblot test and the Test of Memory Malingering. *See* Doc. No. 13 at 5-6. She further argues that the medical evidence as a whole supports the limitations identified by Dr. Nesbit. In particular, she references medication changes and the time period after mid-2013, when she alleges her mental abilities began deteriorating. *Id.* at 8-10. Finally, she argues that it was error for the ALJ to give significant weight to Dr. Ekstrom's opinion from 2012, in light of her alleged deteriorating condition and Dr. Nesbit's more recent opinion from 2016. *Id.* at 10.

The ALJ analyzed Dr. Nesbit's opinion as follows:

> Dr. Nesbit's diagnostic impressions included borderline personality disorder and major depressive disorder. Dr. Nesbit opined the claimant could not function appropriately in the workplace, citing avoidance of social situations. The undersigned finds this to be inconsistent with the claimant's demonstrated history, however, which had her working as [a] customer service manager at Wal-Mart immediately before the alleged onset of disability *based on the claimant's alleged knee injury*. There is no evidence in this case that the claimant has been limited in the workplace because of psychological factors. Furthermore, Dr. Nesbit opined the claimant would be expected to not finish work tasks because of impulsivity. Again, this is inconsistent with the claimant's recent work history, where she was promoted from retail clerk to customer service manager. Typically, one would not expect an employee to be promoted if that employee were not completing job tasks. Again, because these opinions are wholly inconsistent with the claimant's demonstrated work history immediately prior to her alleged onset of disability, I give them no weight.
>
> The undersigned also considered that Dr. Nesbit's assessment is inconsistent with the claimant's progress notes from Blackhawk-Grundy. While her treatment there was consistent with her diagnoses, the clinical findings documented by her therapist and nurse practitioner do not comport with the significant limitations alleged in Dr. Nesbit's report.

AR 37 (emphasis in original). Judge Williams noted that as an examining source, rather than a treating source, the ALJ was required to evaluate Dr. Nesbit's opinions based on several factors, including consistency with the medical record as a whole and the familiarity he had with the case record. Doc. No. 17 at 8 (citing 20 C.F.R. §§ 404.1527(c)(4); 404.1527(c)(6)). He concluded the ALJ provided good reasons for discounting the weight given to Dr. Nesbit's opinions.

It is not the court's role "to reweigh the evidence or review the factual record de novo." *Masterson v. Barnhardt*, 363 F.3d 731, 736 (8th Cir. 2004). I must only "determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion." *Id.* I "may not reverse the Commissioner's decision merely because substantial evidence exists in the record that

would have supported a contrary outcome." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). The ALJ is responsible for weighing conflicting evidence among medical sources. *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Inconsistencies with other evidence in the record, including other doctors' opinions is sufficient for discounting a medical source opinion. *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005).

Contrary to Stearns' argument, the ALJ did not discount Dr. Nesbit's opinion based on the lack of supporting objective medical evidence. Rather, the ALJ focused on: (1) the lack of support from other medical evidence in the record and (2) inconsistencies between the severity of limitations identified by Dr. Nesbit, and other evidence in the record, including Stearns' work history. In other words, the ALJ did not dispute that Stearns had these impairments (as confirmed by objective medical evidence) only the degree to which these impairments resulted in extreme work-related limitations. I find the ALJ's reasons are supported by substantial evidence in the record as a whole.

With regard to the timing of medical opinions and Stearns' allegation that her mental condition began deteriorating around mid-2013, the ALJ considered medical evidence during this time period. *See* AR 34-35. While Dr. Ekstrom's examination was performed in December 2012, the ALJ considered and incorporated evidence far beyond that. For instance, he noted that in addition to regular outpatient treatment, Stearns sought emergency psychological treatment at least once during the relevant period, referencing an emergency visit in August 2014. *Id.* at 35. He noted her mental status examination was normal at this time and she was released home. *Id.* The ALJ also included additional limitations not identified by the state agency psychological consultants "in deference to evidence developed at the hearing level, including her hearing testimony." *Id.* Finally, the ALJ considered Stearns' progress notes from Blackhawk-Grundy, dating from March 24, 2011, to November 17, 2015, in concluding that these notes did not comport with the significant limitations alleged in Dr. Nesbit's report. *See*

13

AR 602-635; 763-866; 934-973. While these notes do contain some medication changes, the reasons for those changes is not clear and could be related to adverse side effects rather than a worsening of symptoms. Having reviewed these notes and all other evidence in the record, I find that the ALJ's reasons for discounting the weight assigned to Dr. Nesbit's opinion are supported by substantial evidence in the record as a whole.

C.  *Substantial Evidence*

Stearns relies mainly on the arguments raised in her principal brief as to this objection, but specifically challenges Judge Williams' analysis with regard to the extent of medical evidence and medical opinion evidence that must support the RFC determination. She contends the court's reliance on *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004), is incorrect because *Eichelberger* involved a Step Four determination, whereas Stearns' case was resolved at Step Five. She argues the ALJ's RFC determination requires a supportive medical opinion. Without such an opinion, she contends the ALJ is "playing doctor" and relying on his own inferences.

With regard to Stearns' mental limitations, Judge Williams noted that Stearns does not challenge the sufficiency of the evidence from December 2012 through early 2013, which was supported by the opinion of the consultative examiner, Dr. Ekstrom. Doc. No. 17 at 9. She also does not argue that the ALJ should have further developed the record with regard to Stearns' mental condition after mid-2013. *Id.* Based on Eighth Circuit law, Judge Williams noted that an ALJ's RFC determination could be supported by substantial evidence in the record without a specific medical opinion supporting a specific RFC finding. *Id.* at 11 (citing *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)).

Judge Williams pointed out that in determining Stearns' mental RFC, the ALJ highlighted inconsistencies between Stearns' subjective allegations and the non-medical evidence of record. *Id.* The ALJ then calculated mental RFC limitations giving "some

weight" to the opinions of the state agency psychologists and "no weight" to Dr. Nesbit's opinion. *Id.* at 12. He also considered Stearns' progress notes from Blackhawk Grundy Mental Health Center (AR 37; 453-73, 603-35, 763-866, 934-73) and the state agency consultants' opinions in making his RFC finding. *Id.* Both the progress notes and opinions reference work-related functions such as attention/concentration, organization and following instructions. *See* AR 116-27; 129-41; 143-57; 602-35; 763-866; 934-73. The ALJ assigned greater limitations than those identified by the consultants based on Stearns' testimony at the hearing. He concluded she was "capable of understanding, remembering, and carrying out simple instructions and tasks at a SVP 2 level" and "could have occasional contact with co-workers, supervisors, and the general public." AR 34-35. Judge Williams concluded that the mental RFC assessment was supported by substantial evidence in the record as a whole. *Id.*

With regard to Stearns' physical RFC, Judge Williams acknowledged Stearns' argument that the state agency consultants rendered their opinions in 2013, and therefore, had not considered Stearns' second knee surgery in 2014. *Id.* Judge Williams explained, however, that Stearns did not point to any evidence in the record that would have changed the opinions after her second knee surgery. *Id.* at 12-13. Judge Williams noted the ALJ included several limitations related to Stearns' ability to ambulate and other lower body functions. *Id.* at 13. Citing *Eichelberger*, he noted it is the claimant's burden to prove her RFC and that Stearns had failed to present any evidence, or even allege, that her RFC would have been different had the ALJ considered opinions obtained after the second knee surgery. *Id.*

Stearns reads too much into Judge Williams' citation of *Eichelberger*. Judge Williams cited that case for the proposition that it is claimant's burden to prove her RFC. *Id.* He did not cite it for the proposition that "no further medical opinions were needed," as Stearns argues. *See* Doc. No. 20 at 3. To the extent *Eichelberger* could be read as not supporting this proposition under the circumstances present here, more recent Eighth

15

Circuit law does. *See Hensley*, 829 F.3d at 932 ("there is no requirement that an RFC finding be supported by a specific medical opinion"). Judge Williams simply explained, correctly, that if Stearns intends to argue that the medical opinions in the record are insufficient, it is her responsibility to argue the ALJ should have further developed the record and provide reasons why additional medical opinions are necessary. Stearns did not do so. She pointed to no evidence of record after her second knee surgery to suggest that the opinions from the state agency consultants were no longer reliable. For instance, she did not reference any medical records indicating her physical abilities had drastically decreased following the surgery or that she was somehow worse off following the surgery.

Based on my de novo review, I agree with Judge Williams' assessment of the ALJ's RFC determination and with his conclusion that it is supported by substantial evidence in the record as a whole with regard to both physical and mental limitations. The ALJ considered the opinions of Dr. Ekstrom (a consultative examiner), Dr. Nesbit (an examining source), state agency consultants (non-examining sources) and numerous medical records from Stearns' treating sources. In comparison, the medical opinion evidence in *Combs*, a case Stearns cites, consisted only of opinions from state agency consultants. *See Combs v. Berryhill*, 878 F.3d 642, 644-45 (8th Cir. 2017). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Hensley*, 829 F.3d at 932 (citing *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). Again, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*. The ALJ had sufficient medical evidence to consult in making his RFC determination and his RFC accurately reflects that medical evidence. Because the ALJ's RFC is supported by substantial evidence in the record as a whole, including "some medical evidence of the claimant's ability to function in the workplace," I find no error. *Hensley*, 829 F.3d at 932 ("Because

16

a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace").

## D.     *Stearns' Subjective Allegations*

With regard to this objection, Stearns specifically challenges Judge Williams' analysis of the ALJ's treatment of her daily activities. She otherwise relies on the arguments raised in her principal brief. *See* Doc. No. 20 at 4. With regard to her daily activities, the ALJ stated:

> The claimant has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. The claimant admits the ability to independently perform personal care tasks such as bathing, dressing, personal hygiene, feeding and toileting – albeit with some occasional help with dressing (Exhibit 13E). The claimant admits the ability to cook simple meals, shop and drive (Exhibit 13E). In terms of household tasks, the claimant admits the ability to wash laundry and care for a dog (Exhibit 13E).
>
> While the claimant's ability to engage in these ordinary life activities is not itself conclusive proof that the claimant is also able to engage in substantial gainful activity, the claimant's capacity to perform these tasks independently is a strong indication that the claimant retains the capacity to perform the requisite physical and mental tasks that are part of everyday basic work activity. That indication is further supported by the objective medical signs and findings discussed in more detail below. All of these factors, considered together, constitute sufficient evidence of the claimant's ability to engage in full-time, competitive work within the parameters of the above residual functional capacity.

AR 31. After discussing the *Polaski* factors, Judge Williams noted that the ALJ discussed Stearns' daily activities; the location, duration, frequency, and intensity of her pain; and effectiveness of medication, physical therapy and other treatment modalities in evaluating her credibility. Doc. No. 17 at 13-14. He concluded the ALJ gave good reasons for discounting Stearns' subjective allegations, which were supported by substantial evidence in the record as a whole. *Id.* at 15-16.

As mentioned above, Stearns takes issue with the ALJ's finding that her daily activities suggest her limitations are not as serious as alleged. She argues that circuit precedent seems to have shifted from the position that a claimant need not be bedridden to be found disabled to a requirement that a claimant must be bedridden to be found disabled. Doc. No. 20 at 4. She contends that merely because a particular activity is not compatible with disability does not mean that engaging in the activity should diminish the claimant's overall credibility. Instead, she argues that the ALJ must evaluate whether the particular activity is inconsistent with the claimant's subjective limitations, and if so, then the ALJ may rely on that activity to discount the claimant's credibility.

The ALJ acknowledged that "the claimant's ability to engage in these ordinary life activities is not itself conclusive proof that the claimant is also able to engage in substantial gainful activity." AR 31. Indeed, the ALJ provided several other reasons for finding the alleged severity of Stearns' limitations not fully credible. First, the ALJ noted that the objective medical signs and findings supported a finding that Stearns was able to perform the requisite physical and mental tasks for everyday work activity. AR 31. Second, he noted there was no treatment order for an assistive device, even though Stearns claimed she needed to use one. *Id.* at 32. Third, Stearns met all of her recovery goals after 15 sessions of physical therapy following her knee surgery and was discharged with a home exercise program. When physical therapy was later recommended following further complaints of pain, Stearns failed to participate after only three attempts. *Id.* at 32-33. Fourth, the ALJ noted she self-limited her performance during a functional capacity evaluation in January 2016. *Id.* at 33. Fifth, based on her work history of nominal earnings with sporadic wages well below the substantial gainful activity level, her lack of employment seemed to be related more to a lack of motivation or desire to work rather than the alleged limiting symptoms. *Id.* at 34.

All of these are good reasons for concluding that a claimant's allegations of disability may not be as severe as alleged. Based on my de novo review of the evidence,

18

I agree with Judge Williams that the ALJ's analysis of Stearns' credibility is supported by substantial evidence in the record as a whole.

## V. CONCLUSION

For the reasons set forth herein:

1. Stearns' objections (Doc. No. 20) to the Report and Recommendation (Doc. No. 17) are **overruled**.

2. I **accept** the Report and Recommendation (Doc. No. 17) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Williams' recommendation:

   a. The Commissioner's determination that Stearns was not disabled is **affirmed**; and

   b. Judgment shall enter against Stearns and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 14th day of September, 2018.

_____
Leonard T. Strand, Chief Judge